**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| CHASE MEDICAL, L.P., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:04-cv-02570-M |
| | § | |
| CHF TECHNOLOGIES, INC., and | § | |
| ENDOSCOPIC TECHNOLOGIES, INC., | § | |
| | § | |
| Defendants. | § | |

# Final Judgment

Before the Court are two motions: Plaintiff's Motion for Entry of Judgment on the Verdict, for Enhanced Damages, Attorneys' Fees, and for Permanent Injunction, and Plaintiff's Application for Attorneys' Fees and Expenses. For the reasons set forth below, the Court awards Plaintiff injunctive relief, enhanced damages and attorneys' fees (but in amounts less than what was sought by Plaintiff), and expenses.

*Factual Background*

This case was tried before a jury, which rendered a verdict in favor of Plaintiff Chase Medical, L.P., ("Chase") and against the Defendants CHF Technologies, Inc. ("CHF") and Endoscopic Technologies, Inc., ("Endoscopic Technologies") on all issues submitted. The jury found willful infringement by Defendants of Claims 19 and 28 of United States Patent 6,681,773 (the "'773 Patent") and of Claims 1, 9, 11, 17-20, 62, 68, 70-73, and 80 of United States Patent 6,994,093 (the "'093 Patent"). The jury also found in Plaintiff's favor on issues of validity and on damages incurred by Plaintiff.

*Enhanced Damages*

The Court concludes that Plaintiff is entitled to enhanced damages. Under 35 U.S.C. § 284, damages may be enhanced up to three times the compensatory award. The paramount determination in deciding whether, and how much, to enhance damages is the egregiousness of Defendants' conduct based on all the facts and circumstances.[1] The court must consider factors that render Defendants' conduct more culpable, as well as factors that are mitigating or ameliorating. In *Read Corp. v. Portec, Inc.*,[2] the Federal Circuit identified nine relevant considerations: (1) whether the infringer deliberately copied the ideas or design of another (the idea includes not only the particular elements of the patent claim but also their commercial embodiment, which in this case is Plaintiff's mannequin); (2) whether the infringers, when they knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringers' behavior as a party to the litigation; (4) Defendants' size and financial condition; (5) the closeness of the case; (6) the duration of Defendants' misconduct; (7) remedial action by the Defendants; (8) Defendants' motivation for harm; and finally, (9) whether Defendants attempted to conceal their misconduct. To enable appellate review, a district court is obligated to explain the basis for awarding enhanced damages.

Factors one, two, six, seven and nine involve related factual questions. Substantial evidence adduced at trial suggests that the Defendants were aware of Plaintiff's mannequin and the '773 and '093 patents, but there is no evidence of any attempt to analyze their product in light of the claims of the '773 and '093 patents. Defendants' marketing materials reflect their awareness of the identical shaping functions performed by the Blue Egg and the mannequin.

---

[1] *See Rite-Hite Corp. v. Kelley Co.*, 819 F.2d 1120, 1125-24 (Fed. Cir. 1987).
[2] 970 F.2d 816, 826 (Fed. Cir. 1992).

Indeed, those materials touted the Blue Egg's usefulness as a sizer and shaper, compared the mannequin and the Blue Egg's common features, and disclosed a similar surgical technique for the use of both products during left ventricular reconstruction ("LVR"). The Court is of the view that Defendants did not have a reasonable, good faith belief that the Blue Egg would not infringe Plaintiff's patents.

Substantial evidence established Defendants' concealment of their infringing activities. After Plaintiff filed suit, Defendants modified their marketing materials, removing the term "shaper" from the description of the Blue Egg. However, Defendants did not remedy their infringement by discontinuing sales or modifying the Blue Egg, so that it would not function as a shaper. By merely changing the description of the Blue Egg, without removing its offending characteristics, Defendants attempted to conceal their infringement.

Defendants' culpability is not diminished because of the duration of the infringement. Defendants continued their sales throughout the case, until the jury verdict.

The Court's determination to award enhanced damages is not based on Defendants' litigation conduct.

The Court lacks sufficient information to assess the fourth factor—Defendants' financial condition. Although Defendants' response to Plaintiff's request for injunctive relief asserts, without contradiction, that CHF's sole product is the Blue Egg, no other information about the financial condition of CHF or Endoscopic Technologies, including revenues, assets, and liabilities, was submitted by the parties, making it impossible to evaluate the effect of enhanced damages on Defendants' operations. Hence, the fourth *Read* factor does not clearly support granting or denying Plaintiff's request for enhanced damages.

The fifth factor—closeness of the case—favors enhanced damages. The jury reasonably and appropriately determined that Chase's patents were valid, that Defendants infringed every claim of both patents, and that such infringement was willful. Defendants' expert, Dr. Colvin, acknowledged the novelty and unique shaping function of the patented device. Finally, Defendants' marketing materials, which initially touted the Blue Egg as a "shaper," acknowledged that Defendants' device and the patented device performed the same function.

The eighth factor—Defendants' motivation for harm—favors enhanced damages. Defendants engaged in a sales strategy to market the Blue Egg to the same relatively small group of specialized cardiothoracic surgeons who used Defendant's patented device, with an intention to reduce Plaintiff's market share and enhance their own.

Based on the foregoing analysis of the *Read* factors, the Court concludes that the factors favor an award to Plaintiff of enhanced damages. However, the Court determines that double, rather than treble, damages are appropriate in this case. Treble damages are reserved for willful patent infringement that is egregious or blatant.[3] Here, although Defendants' conduct was willful, the Court concludes that it was not so egregious as to warrant trebling.

*Injunctive Relief*

This Court finds that injunctive relief is appropriate because Defendants have caused, and will likely continue to cause, irreparable harm to the Plaintiff, for which Plaintiff has no adequate remedy at law. Defendants' continued sale of infringing products in a small, highly competitive market comprised of approximately two-hundred cardiothoracic surgeons performing LVR in the

---

[3] *See Datascope Corp. v. SMEC, Inc.,* 1990 WL 10345, * (D.N.J. 1990) (determining that "a fifty-percent enhancement of damages is appropriate here. Although SMEC's infringement was willful, it was not blatant."); *see also Chisum v. Brewco Sales & Mfg.*, 726 F.Supp. 1499 (W.D.Ky. 1989) ("The lost profits will however be doubled rather than tripled, since we find that Brewer's actions were willful, but not so egregious as to warrant trebling of the damages.").

U.S. will very likely have serious, long-term consequences for Plaintiff's market share, reputation, and goodwill.

The hardship to Plaintiff resulting from Defendants' continued infringement outweighs any hardship to Defendants from being required to cease sales of their infringing product. Defendants also fail to demonstrate any specific, negative public health consequences from discontinuing sales of the Blue Egg from that date, September 27, 2007, to this date. Defendants advised the Court that they ceased sales of the Blue Egg upon return of the jury's verdict. Defendants presented no evidence of the consequence of the absence of the Blue Egg. Defendants submitted affidavits from cardiothoracic surgeons, dated from mid-October of 2007, indicating the potential for compromised surgical outcomes with the mannequin, and stating their preference for the Blue Egg. These affidavits, however, do not describe the probability or magnitude of these risks, making it impossible for the Court to conclude that there is a public health risk likely to result from continuing the Defendants' decision to voluntarily remove their product from the market after the jury's verdict. The Court concludes that the hardship to Plaintiff from Defendants' continued infringement outweighs the public interest in the continued availability of the Blue Egg. Injunctive relief is thus warranted.

*Attorneys' Fees and Expenses*

This Court determines that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awards Plaintiff its reasonable attorneys' fees and expenses.[4] An express finding of willful infringement is a sufficient basis for classifying a case as "exceptional," and indeed, when a trial court denies attorneys' fees in spite of a finding of willful infringement, the court must

---

[4] 35 U.S.C. § 285 expressly authorizes recovery of attorneys' fees. The Federal Circuit has construed attorneys' fees to include expenses incurred in the prosecution of the case. *See Central Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983). Defendants do not contest that Plaintiff is entitled to reimbursement of the $155,008.57 in expenses incurred in the prosecution of this suit.

explain why the case is *not* "exceptional" within the meaning of the statute. [5] Relevant considerations include the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser.[6] Here, awarding Plaintiff attorneys' fees would result in an equitable distribution of the burdens of litigation. The jury properly found by clear and convincing evidence that Defendants deliberately developed, and marketed to Plaintiff's customers, an infringing product. The case was not close, with the jury reasonably finding willful infringement as to every claim of the '773 and '093 patents. Finally, Defendants' conduct, including concealment of their infringing activities, supports allocating the financial burden of the litigation to the Defendants. Thus, Plaintiff is entitled to reasonable attorneys' fees and expenses.

The Court next determines the amount of attorneys' fees and expenses to which Plaintiff is entitled. Plaintiff seeks attorneys' fees and expenses in the amount of $1,584,762 and $155,008.57, respectively. Defendants solely contest Plaintiff's attorneys' fee request.

The calculation of reasonable attorneys' fees involves a two-step process.[7] First, the court calculates a "lodestar" fee by multiplying the reasonable number of hours spent on the case by the reasonable hourly rates for the participating lawyers.[8] Second, the court considers whether the "lodestar" should be adjusted upward or downward depending on the circumstances of the case under the twelve factors identified in *Johnson v. Georgia Highway Express, Inc.*[9] While

---

[5] *Group One, Ltd. v. Hallmark Cards, Inc.,* 407 F.3d 1297, 1308 (Fed. Cir. 2005).

[6] *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc. et al.,* 781 F.2d 198, 201 (Fed. Cir. 1986).

[7] *See Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1047 (5th Cir. 1998).

[8] *Id.* Although appeal of this Judgment lies in the Federal Circuit, the Court relies in part on Fifth Circuit precedent governing the determination of reasonable attorneys' fees. *See generally Int'l Rectifier Corp. v. Samsung Elecs. Corp.,* 238 Fed. Appx. 601 (Fed. Cir. 2007) (applying law of the circuit of origin of the case to determine whether the district court abused its discretion in setting the amount of attorneys' fees).

[9] 488 F.2d 714, 717-19 (5th Cir. 1974).

*Johnson* set forth twelve factors,[10] the Fifth Circuit has singled out four of the factors as most important: (1) the time and labor involved; (2) the customary fee; (3) the amount involved and the results obtained; and (4) the experience, reputation, and ability of counsel.[11] These four factors are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be double-counted.[12]

### (1) Calculation of the Lodestar

*Reasonable number of hours*

Plaintiff's Application seeks reimbursement for 5,177.5 hours expended on the litigation, excluding time spent on unsuccessful motions. Defendants argue that a ten percent reduction in the hours expended between May 2007 and September 2007 is appropriate to account for the "inherently duplicative efforts and inefficiencies" resulting from Plaintiff's retention of a second law firm, Haynes and Boone, to assist with pretrial preparation. The Court finds that this reduction is appropriate.

Haynes and Boone, LLP ("Haynes and Boone") joined Meyertons, Hood, Kivlin, Kowert & Goetzel, P.C. ("Meyertons Hood") as Plaintiff's co-counsel in early May of 2007, approximately thirty-one months after Plaintiff filed suit. Haynes and Boone inevitably duplicated some of Meyertons Hood's work, since Haynes and Boone's attorneys had to familiarize themselves with the case history, briefs, and discovery before drafting and responding to discovery requests and motions. To account for Haynes and Boone's preparatory work, a ten percent reduction in the hours expended between May and September of 2007 is warranted.

---

[10] The twelve factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.*
[11] *See Migis*, 135 F.3d at 1047; *Codex Corp. v. Milgo Electronic Corp.*, 717 F.2d 622, 631 (Fed. Cir. 1983).
[12] *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1092 (5th Cir. 1982).

*Reasonable hourly rates*

Defendants acknowledge that the hourly rates charged by Plaintiff's counsel are reasonable and, therefore, the Court does not address this issue.

*Lodestar*

After consideration of the Defendants' objections and making an appropriate reduction to the requested hours, the Court finds that a reasonable number of hours times a reasonable hourly rate yields a lodestar of $1,548,062.50.

### (2) Adjustment to Lodestar Calculation

The Court next considers whether the lodestar calculation should be adjusted in light of the four principal *Johnson* factors: (1) the time and labor involved; (2) the customary fee; (3) the amount involved and the results obtained; and (4) the experience, reputation, and ability of counsel.[13] Defendants do not argue that the first, second, or fourth factors warrant a downward adjustment. Defendants acknowledge that Plaintiff's counsel expended substantial time and labor on the case, that their fees are customary for this type of litigation, and that they are capable, experienced, and well-regarded patent attorneys. Instead, Defendants' objections focus on the third factor—Plaintiff's degree of success. In that regard, Defendants make two principal arguments: (1) Plaintiff's fee request, which is more than twice the monetary relief ultimately recovered, is excessive; and (2) a reduction in the fee award is warranted to account for Plaintiff's partial success at trial. Defendants contend that Plaintiff recovered approximately forty-five percent of the total damages it sought and thus achieved limited success. Neither argument is persuasive.

---

[13] *See Migis*, 135 F.3d at 1047.

In assessing a party's degree of success, the Court focuses on whether counsel's expenditure of hours was justified in light of the relief obtained,[14] and the relationship between the relief sought and the relief obtained.[15] Defendant's first argument—that the fee requested substantially exceeds the damages recovered—relates to the first consideration.

In *Hensley v. Eckerhart*, the Supreme Court explained, "If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate *may* be an excessive amount."[16] Here, Plaintiff seeks an amount of attorneys' fees roughly equivalent to two and a half times the damages awarded, excluding pre- and post-judgment interest. The Fifth Circuit, which has approved attorneys' fees "exceed[ing] the total monetary recovery," has not deemed a particular ratio of attorneys' fees to damages as excessive *per se*.[17] In cases where the Fifth Circuit has concluded that the district court's fee award was excessive, the fee ratio presented was significantly larger than that found here. In *Migis v. Pearle Vision, Inc.*, for example, the district court awarded attorneys' fees that were six and one-half times the damages awarded. There, Plaintiff also sought damages over twenty-six times the amount recovered.[18] Concluding that "these ratios are simply too large," the Fifth Circuit overturned the fee award. However, here the fee requested is only two and one-half times the damages recovered—a ratio well within the range suggested by *Migis*, and smaller than that approved by other district courts in this circuit.[19]

---

[14] *Hensley v. Eckerhart*, 461 U.S. 424, 438 (1983).
[15] *See Migis*, 135 F.3d at 1047-48.
[16] 461 U.S. at 436 (emphasis added).
[17] *Branch-Hines v. Hebert*, 939 F.2d 1311, 1322 (5th Cir. 1991).
[18] 135 F.3d at 1047.
[19] *See Lewis v. Hurst Orthodontics, PA*, 292 F.Supp.2d 908 (W.D.Tex. 2003) (approving an attorney fee award of four times the settlement amount); *Williams v. City of Balch Springs*, 1999 WL 1146802 (N.D.Tex. 1999) (approving an attorney fee award of three times the settlement amount) (unreported); *Donihoo v. Dallas Airmotive, Inc.*, 1999 WL 740692 (N.D.Tex. 1999) (approving an attorney fee award of 3.7 times the settlement award) (unreported).

Defendants' argument is also unpersuasive because *Migis* is distinguishable from the case at bar in three significant respects. First, while the plaintiff in *Migis* prevailed on only one of the four theories of liability tried, Chase succeeded on every significant issue litigated. At trial, Plaintiff introduced four theories of infringement: (1) Defendants induced others literally to infringe the patents; (2) Defendants induced others to infringe the patents under the doctrine of equivalents; (3) Defendants contributed to the literal infringement of the patents; and (4) Defendants contributed to the infringement of the patents under the doctrine of equivalents. The jury determined the patents' validity, found willful infringement of all sixteen of the claim limitations under each of the theories presented, and awarded Plaintiff lost profits of $306,669.12. The Court has further determined that Plaintiff is entitled to double damages and permanent injunctive relief. Viewing the entire litigation, the Court concludes that Plaintiff achieved nearly complete success.

Second, the double-digit ratio of damages sought to damages awarded presented in *Migis* does not exist here, as discussed in greater detail below. Third, while the plaintiff in *Migis* obtained only monetary relief, Chase has obtained a permanent injunction barring Defendants from selling the Blue Egg. The Fifth Circuit, emphasizing that a plaintiff's success is "not measured solely by monetary damages,"[20] has held that whether the hours expended are reasonable must also be determined in light of the injunctive relief awarded.[21] The injunctive relief awarded here, which is critical to preserve Chase's competitive position, was a central objective of the litigation. Chase feared further erosion of its market share if Defendants were permitted to continue selling their device. Three factors exacerbated the competitive threat posed

---

[20] *See Coleman v. Houston Indep. Sch. Dist.,* 1999 WL 1131554, *10 (5th Cir. 1999) (unpublished).
[21] *See Singer v. City of Waco, Tex.*, 324 F.3d 813, 830 (5th Cir. 2003) ("We have made clear that 'while a low damages award is one factor which a district court may consider in setting the amount of attorneys' fees, this factor alone should not lead the district court to reduce a fee award.")(quoting *Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 392 (5th Cir. 2000)).

by the Blue Egg. First, the market for the Blue Egg and the mannequin is small: only 200 cardiothoracic surgeons in the U.S. are trained to perform LVR. Second, Defendants' marketing plan involved deliberately targeting Chase's clients.[22] Third, Chase feared that surgeons would become lifelong users of whichever device they first mastered. This dynamic meant that continued sale of the Blue Egg threatened permanent displacement of the mannequin from the market. Thus, the permanent injunction awarded is a crucial element of the overall relief obtained by Plaintiff, and Defendants' first asserted ground for reducing the fee award is unavailing.

Defendants' second contention— that Plaintiff's partial success warrants a reduction in attorneys' fees—is unpersuasive. Defendants argue that Plaintiff recovered approximately forty-five percent of the damages sought. However, the jury awarded Plaintiff damages of $306,669.12—within the range referenced in the testimony of Plaintiff's expert, Scott D. Hakala. Thus, the Court rejects Defendants' contention that Plaintiff only achieved partial success.

Viewing the scope of the litigation as a whole, the Court finds that Plaintiff achieved overwhelming success. Thus, no downward adjustment of the lodestar is warranted based on the *Johnson* factors.

This Court, having considered the verdict of the jury and the motions and arguments of counsel, **ORDERS, ADJUDGES, AND DECREES** as follows:

1.      Claims 19 and 28 of the '773 Patent are valid and enforceable.

2.      Claims 1, 9, 11, 17-20, 62, 68, 70-73 and 80 of the '093 Patent are valid and enforceable.

---

[22] Pl. Ex. 46; *see also* Pl. Ex. 99 (Defendants' internal documents directing sales team to "focus on the surgeons that were trained by Chase Medical" as their first priority).

3.      Plaintiff shall recover from Defendants CHF and Endoscopic Technologies, jointly and severally, actual damages of **$ 306,669.12** for lost profits caused by the infringement of Claims 19 and 28 of the '773 Patent, and Claims 1, 9, 11, 17-20, 62, 68, 70-73 and 80 of the '093 Patent. The parties have stipulated the amount of prejudgment interest on such sum, although Defendants dispute that they are liable for prejudgment interest and any damages. Plaintiff shall recover prejudgment interest of **$ 66,686.77**.

4.      Because CHF and Endoscopic Technologies's infringement was willful, Plaintiff is entitled to double damages. Accordingly, Plaintiff shall also recover from Defendants, jointly and severally, additional enhanced damages of **$ 306,669.12** under 35 U.S.C § 284.

5.      Pursuant to 35 U.S.C. § 285, Plaintiff is entitled to the amount of **$ 1,548,062.50** as reasonable attorneys' fees and **$ 155,008.57** as expenses.

6.      Chase shall also recover from Defendants CHF and Endoscopic Technologies, jointly and severally, post-judgment interest, computed from the date of this Judgment at the rate of **1.60%**, compounded annually on the total amount of damages, attorneys' fees and expenses, and prejudgment interest under this Final Judgment, until such Judgment is paid in full.

7.      Chase shall further recover all taxable court costs from Defendants CHF and Endoscopic Technologies, jointly and severally.

8.      A permanent injunction is granted as follows:

a.      Defendants CHF Technologies, Inc. and Endoscopic Technologies, Inc. and their officers, agents, directors, servants, representatives, distributors, sales staff, employees, successors and assigns, as well as those persons in active concert, participation or combination with them, either directly or through the contribution or inducement of others, are hereby enjoined and restrained during the respective statutory terms of the '773 and the '093 Patents from making or causing to be made, offering for sale or selling, distributing or otherwise delivering, proposing or threatening to offer, sell, distribute or deliver, or using, in the United States, or importing into the United States, its Blue Egg or the method taught using the Blue Egg, or colorable variations

thereof, or any other system, method, or process within the scope of Claims 19 or 28 of the '773 Patent or Claims 1, 9, 11, 17-20, 62, 68, 70-73, and 80 of the '093 Patent.

b.   Defendants shall deliver all existing Blue Egg products to Plaintiff's counsel, Phillip B. Philbin, at 901 Main Street, Suite 3100, Dallas, Texas 75202, within twenty (20) days of the date of this Judgment.  Defendants are hereby further restrained and enjoined from redistributing those products or distributing any other systems or teaching to any business in the United States methods infringing the '773 and '093 patents.

c.   Defendants CHF Technologies, Inc. and Endoscopic Technologies, Inc. shall notify all hospital personnel, surgeons, related staff and employees, as well as any other person who has purchased the Defendants' Blue Egg, of this Final Judgment and provide them with a copy of the Final Judgment and advise them that all use of the Blue Egg should cease immediately.

d.   Within thirty (30) days of the effective date of this Judgment, Defendants CHF Technologies, Inc. and Endoscopic Technologies, Inc. shall file with the Court and serve on Plaintiff a statement in writing and under oath, setting forth in detail the manner in which Defendants have satisfied the obligations of paragraphs (a) through (c) above.

9.   Defendants shall take nothing on any claims or counterclaims asserted against Plaintiff.

10.   All writs and processes for the enforcement and collection of this Judgment may issue as necessary.

11.   Any claim not expressly addressed by this Judgment is denied.

12.   This Judgment is final as to all claims and all parties.

**SO ORDERED**.

April 2, 2008.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS